## Griffith v. Delaney et al.

*High, Dettra & Swartz*, for exceptant.
*A. Clarence Emery* and *Ralph F. Wismer*, contra.

DANNEHOWER, J., December 31, 1941.—Exceptant, Maggie B. Griffith, as mortgagee, instituted foreclosure proceedings and purchased the real estate at the sheriff's sale. She contends that the 1938 and 1939 taxes on said real estate, amounting to $73.66, should not be paid from the fund for distribution arising from the sheriff's sale, because said taxes are not valid liens against said real estate foreclosed and purchased by her.

The admitted facts establish:

1. That on January 15, 1924, Theodore M. Delaney purchased lot *248* on plan of Orlando Land & Improvement Company, situate on Lorraine Avenue and Walnut Avenue, Springfield Township, Montgomery County, Pa.

2. On November 28, 1925, Theodore N. Delaney executed a mortgage to Maggie B. Griffith on this real estate to secure the sum of $2,700, which said mortgage was duly recorded.

3. In 1938, 1939, and 1940, the asessment was "Theodore M. Delaney Estate, Lorraine Avenue *246* — $1,200".

4. Prior to the first Mondays of May 1939 and May 1940, the tax collector of Springfield Township filed with the County Commissioners of Montgomery County returns showing the levy and assessment of taxes for the years 1938 and 1939 against "lot *246*, Lorraine Avenue, Theodore M. Delaney Estate", and said returns were entered in the tax return docket " lot 246, Lorraine Ave., Theodore M. Delaney Estate".

5. That lot *246* Lorraine Avenue was owned by Jacob F. Hummel since January 20, 1931.

6. Exceptant, Maggie B. Griffith, by the issuance of a sci. fa. sur mortgage instituted foreclosure proceedings against lot 248, Lorraine Avenue, owned by Theodore M. Delaney estate, and the sheriff's sale was advertised for October 30, 1940.

7. On October 18, 1940, 12 days before the sheriff's sale, the county commissioners changed the return in the tax return docket by crossing out lot *246*, and inserting lot *248*, and thereafter filed with the sheriff the claim of 1938 and 1939 taxes amounting to $73.66, to be paid from the proceeds of the sheriff's sale.

8. Such change was made by virtue of a letter from the board of assessment and revision of taxes, and was later noted in the assessment docket on October 24, 1940.

9. The sheriff's sale of lot *248* was held on October 30, 1940, and Maggie B. Griffith, mortgagee, being the highest and best bidder, purchased said real estate for $250.

10. The sheriff's schedule of distribution as filed includes as a lien, prior to exceptant's mortgage, taxes for the years 1938 and 1939 in the total sum of $73.66.

Exceptant has filed these exceptions to the sheriff's schedule of distribution, contending that these liens for taxes are not valid liens against lot 248, and the commissioners had no authority in law to change the description of the real estate and substitute another property.

The question for decision is, whether a tax lien regularly filed in the county commissioners' office in the tax return docket against one particular property can be thus changed so as to constitute a valid lien against another property, inserted by an employe of the county commissioners?

The Act of May 29, 1931, P. L. 280, 72 PS §5971*a*

et seq., provides the procedure for acquiring liens on seated lands for delinquent taxes:

"Section 1. . . . From and after the passage of this act, it shall be the duty of each receiver or collector of any county, city, borough, town, township, school district, poor district or institution district taxes, to make a return to the county commissioners of such taxes which are assessed and levied on seated lands, and which are unpaid, and for which no liens have been filed, not later than the first Monday of May, in the year succeeding the year in which the respective taxes were assessed and levied, filing therewith a description of said real estate by adjoiners or otherwise, sufficient to identify said land with name of the owner or reputed owner against whom such taxes were assessed and levied, and the amounts of taxes unpaid, and the year during which the said taxes were assessed or levied. . . .

"Section 2. Upon receipt of such returns, the county commissioners shall enter upon a docket, to be styled Tax Return Docket, the returns so made, with a description of the said lands, which return and entry shall constitute a lien on such lands. Such returns for each ward in each city and borough, and for each township and incorporated town, shall be alphabetically indexed, with name of owner and locality and year during which the return was filed and page of the docket wherein the lien is recorded, in a book or books to be provided by the county commissioners, to be known as the tax lien index."

When the tax collector and county commissioners have complied with the terms of this act, a first lien exists upon the real estate liable for the payment of the taxes, which shall have priority to and be fully paid out of the proceeds of any judicial sale: First National Bank of Koppel, for use, v. Mount et al., 136 Pa. Superior Ct. 549. To be valid such liens must also be filed not later than the first Monday of May in the year succeeding the year in which the respective taxes were assessed and levied.

The Act of July 24, 1941, P. L. 495, sec. 1, provides as follows:

"Whenever any tax collector or receiver of taxes of any county, city, borough, town, township, school district, poor district or county institution district shall have failed or neglected to make return to the county commissioners of taxes assessed and levied against seated lands for the years one thousand nine hundred and thirty-eight, one thousand nine hundred and thirty-nine or one thousand nine hundred and forty, within the time required by law, such tax collector or receiver may legally and validly make return of such taxes in the manner provided by law for such return at any time within six months after this act takes effect, and the liens of any taxes for said years so returned under the authority of this act shall be valid and are hereby ratified and confirmed, and a county treasurer's sale may be had for such taxes at any time when a treasurer's sale is held or on any day to which said sale may be adjourned or readjourned in the manner provided by existing law: Provided, however, That the return of any tax under this act shall not revive or re-establish any tax lien against real estate which was transferred to any bona fide purchaser during the time when any such lien was lost, nor shall such return affect the priority of the lien of any mortgage or other lien which was entered prior to the tax lien or which gained priority because of the failure of the collector to return the tax at the regular time."

No authority has been brought to our attention, nor can we find any to support the action of the county commissioners, in thus changing a public record and crossing out one description and inserting another, long after the time had expired for filing a valid lien.

We are, therefore, of the opinion, that insofar as premises "Lot 248 Lorraine Ave." are concerned, there never was a valid lien filed for delinquent taxes, because the statutory requirements were not followed.

The remedy would have been to take advantage of the Act of 1941, supra, during the six months' period of its effectiveness, and before any prior rights intervened.

And now, December 31, 1941, for the foregoing reasons, the exceptions to the sheriff's schedule of distribution, filed by Maggie B. Griffith, are hereby sustained. An exception is allowed.